John Steller, Jr., and Ida Steller, his wife, appellants,

*v.*

S. Elizabeth Sell, respondent.

An agreement made between a creditor and his debtor, that if the debtor
would procure his life to be insured, in order to secure the payment of the
indebtedness, in an insurance association, naming the sister of the debtor, who
was the wife of the creditor, and who had knowledge at the time of the pur-
pose of the insurance, as beneficiary, in order to comply with the laws of the
insurance association, which required that insurance could only be had for
the benefit of a blood relative of the insured, and that the creditor would pay
the assessments on such insurance, and that, after the death of the debtor, the
creditor, upon receiving the proceeds of insurance, would pay over to the wife

Steller *v.* Sell.

·of the debtor whatever balance remained after deducting the indebtedness and interest, and the assessments paid and interest thereon, is an agreement founded upon a good consideration and created a trust in favor of the wife of the debtor, enforceable in equity against the creditor, and the beneficiary named in the certificates of insurance, who received the proceeds of such insurance.

*Mr. Cortlandt Parker* and *Mr. George F. Tuttle,* for the appellants.

*Mr. Thomas Anderson* and *Mr. Amzi D. Taylor,* for the respondent.

*Brief of Appellants.*—After stating the facts, says : Upon these undisputed facts, is not the decree evidently wrong ?

What was the transaction ?  What did Sell do ?  Nothing but ·consent to have his life insured for the benefit of his sister, his ·creditor's wife.  He paid nothing then or ever.  Steller, through the insurances, acquired the chance of getting his debt paid if he ·outlived Sell, and his wife (Steller's wife) was willing to give that chance to him.  His payment of premiums was making a present of so much money to his wife, a mode of preserving to her his property, which was hers.  Did he mean to advance these premiums or assessments as long as Sell lived, in order to benefit Mrs. Sell ?  Why ?  Where stands the equity of the case upon the papers ?  Steller's wife, through the wish of her brother to pay the debt he owed her husband, and through natural love and affection on her brother's part to her, and through the generosity of her husband, gets the money for which he paid.

Another motive besides these so far mentioned may probably have influenced Sell.  He was one of three children.  His father had advanced to him $8,000, for which judgment had been entered in the same year, 1884, when this life insurance matter ·occurred.  Justice to his sister, whose patrimony was reduced by his indebtedness and failure, might have strengthened the love and affection which prompted making her the beneficiary in this insurance which her husband was to protect.

Whatever the motive, the transaction made the policy Ida's property, and no change in it could be made by which the con-

tract between her and the company could be annulled or its
benefit conferred upon another person without her consent.
Even if Sell and Steller meant to do this, they could not, in law
or in equity.   They jointly arranged for and completed a gift to
Mrs. Steller of a valuable property, an interest through insurance
in the life, or rather death, of George W. Sell.   If they proposed
that when Sell died, if he died, the insurance money should be
used by Mrs. Steller, first, to pay the debt and the premiums,
and then to go to the wife of Mr. Sell, it was of no consequence
unless Mrs. Steller agreed and did it.   They could make no such
agreement for her.   They do not pretend that she made any
such.   She denies it fully and emphatically.

The theory of the vice-chancellor is that these two men could,
by their agreement, impress a trust upon a contract made by an
insurance corporation, in express language, with a beneficiary,
and negative and alter it.   If that were so, the insurance com-
pany could be made to respect that new trust.   If the trust was
created at all, it was when the policy was issued.   Will anyone
seriously contend that this could be done?   Could Mrs. Steller
be made to become trustee for Mrs. Sell without her so agreeing?
If she was a mere figurehead, could she be such without herself
so agreeing?

The vice-chancellor agrees to the insistment that the trust
must have been impressed at the time when the insurances were
effected.   His view is "that the wife was a mere figurehead in
the transaction, knowing its terms and purpose, but having no
equitable interest whatever in the proceeds of the policies."   And
yet the wife declares the contrary of all this; the husband cor-
roborates her.   The evidence of the other witnesses is of a state-
ment alleged to have been made by the husband, out of the
presence of his wife, and therefore in nowise binding upon her,
and which, if made, might have proceeded from an uninstructed
belief that the control of these policies was his, and that their
proceeds did not belong to the person to whom they were paid.

An important circumstance as to the subjecting the policies,
when made, to this trust in favor of Mrs. Sell, is that she was
not present at the time and knew nothing of it at any time ex-

·cept afterwards.   Her husband, she says, told her that there were policies on her husband's life amounting to $8,500, but that was all her knowledge.

Steller swears that he and Sell were the only ones together at the time of taking out this insurance.   .

And the two letters are conclusive evidence that Sell had no idea of any such trust.   The man had taken out other insurances for his wife—$5,100 worth.

. And she unites with her husband in promising, by the second letter, payment of the $20 borrowed, after his death, out of this insurance, showing that at that time she never knew of her beneficiary right in the insurances now claimed; but referring to policies of which she did know the premiums of which her husband paid, and wanted this money to pay, she signs the agreement with him.

Is it possible that George Sell at that time knew that his wife was interested in policies so large, and so soon to fall in—for he was very sick at the time—and did not tell her of her right, nor say to Steller, you know that the policies you hold are soon to fall in, and so the $20 I ask for is sure soon to come to my wife?

Read the letters; they are very convincing.

The principle for which I have contended, that in the case of a policy payable to a beneficiary, he or she cannot be divested of the right conferred by any act of the insured without her or his consent, is supported by many cases collected in *13 Am. & Eng. Encycl. L. 655 note 1 tit. "Life Insurance."* Some of these cases relate to beneficiaries who were children of the insured.   *Ricker* v. *Charter Oak Life Insurance Co.* is a strong case.   The beneficiaries were the insured's wife and children; the wife died leaving children; the husband married again, and had one child by the second wife.   Having paid all the premiums required, the husband surrendered the policy and took a paid-up policy in the name of the second wife.—*Held,* that this was invalid as against his children, and that the child of the second marriage was entitled to share with those of the first.

Steller *v.* Sell.

In *Brockhaus* v. *Keane, 10 Biss. 330,* insurance was effected for three daughters of the insured, who were minors ; with their consent, the insured exchanged the three policies for paid-up policies. It was also consented before the original policies were surrendered that the proceeds of all the policies should be held by a trustee for all in equal shares. The original policies were for different amounts.—*Held,* that being minors the daughters were not bound, and that one of them, on reaching majority, could demand the proceeds of the paid-up policy taken in her name, although the amount exceeded one-third of the sum of all the policies. " Much less can one who has effected insurance on the life of another for the benefit of another, control the same, although he may have retained the policy and paid the premiums" *(13 Am. & Eng. Encycl. L. 656 tit. " Stranger to Contract "),* referring to five adjudged cases.

A change can only be made as provided for in the contract. See, among other cases *(13 Am. & Eng. Encycl. L. 655),* *American Legion of Honor* v. *Smith, 17 Atl. Rep. 770.*

The vice-chancellor says truly that " the object of the complainant is to impress a trust upon this fund in favor of herself, a trust springing out of the agreement entered into between Mrs. Steller and her husband at the time when the insurances [there were three] were effected."

Such a trust could not be unless the two parties agreeing then held, together or singly, the policies in trust for Ida Steller, or, if you please, for Ida and her husband. If so, does not our statute of frauds apply ? *Rev. p. 445 § 4* reads thus :

"All grants and assignments of any trust or confidence shall be in writing, signed by the party granting or assigning the same or by his or her last will, or else shall be utterly void and of no effect."

As already suggested, the case for the complainant stands entirely upon parol evidence of the alleged declarations of John Steller, all which were stated to be made out of the presence of Mrs. Steller, were not with her consent nor as her agent, and are, therefore, of no avail.

Note then, further, that the complainant states in her bill one single conversation only with John Steller, and one single declaration by him that he had received said insurance money, and that he would come to see her "within a few days about settling the matter," but that he did not fulfill his promise, and yet, when sworn as a witness, she says he did come after receiving the certificates from Chicago, and that then and there, in answer to her searching question, ending with "what is left is to come to me," she says he gave full assent.

At that time, too, her daughter was conveniently near. It looks extremely like arrangement; why had she not asked Steller previously, if she had any idea of such a windfall for herself? Then comes a third witness, apparently disinterested, with a story singularly like that of the others, beginning with the question "Do I understand this matter?" &c.; that is the way the others did. He tells the story through, and needs the question at the end, "What, if anything, was said about the residue?" a leading question, the answer so far given being to one which called for the whole conversation, word for word. To this he gives the answer which has so impressed the vice-chancellor.

This gentleman is a very great friend of the widow, meeting her often for some few weeks after the funeral, and the conversation then was on the possibility of Mr. Steller carrying out the agreement.

And, it seems to me, there is a strong contrast between the witness' first account of his conversation with Mrs. Steller and that subsequently given.

In opposition to all this, read the evidence of Mr. Steller, and after that, of Mrs. Steller, denying the material allegations of these witnesses and stating positively, first, that the material words as to the surplus put into Mr. Steller's mouth were never said by him, and second, that Mrs. Steller knew of the insurances when projected, and of their having been made with herself as beneficiary, immediately after their issue; that she had the policies, and never consented to the payment of anything to Mrs. Sell; that at one time she proposed to give the latter some-

thing, but changed her mind when it was found that she was not penniless but had insurances herself to a considerable amount.

The evidence of these alleged declarations seems of so little consequence that I forbear to expend more time upon it, and my associate, who took the testimony, can best handle it.

On appeal from a decree advised by Vice-Chancellor Reed, who delivered the following opinion :

The bill in this case is filed for the purpose of compelling the defendant to pay to the complainant the residue, a part of the money received upon three policies of insurance written upon the life of complainant's husband.

The facts seem to be these : Mr. Sell, the husband of complainant, in 1884, was indebted to the defendant in a sum of either $800 or $1,300. Sell had failed in business. Steller desired to secure himself for the amount of Sell's indebtedness to him. Steller suggested to Sell that he, Sell, should assent to an insurance upon his life for the purpose of such security. Sell consented to this and three policies were written, one for $1,000, another for $2,500, and still another for $5,000. The assessments upon these policies were paid by Steller until 1894, in April of which year Sell, the insured, died. The policies were written in the name of Mrs. Steller, who was a sister of Mr. Sell. This was obviously done because the by-laws of the insurance association appear to have required that the policies should be taken out for the benefit of a blood relative of the insured. The money due upon these policies was paid by the company, after proof of death, by a check to Mrs. Steller, which check was endorsed by her and given to her husband and put by him in the bank and the proceeds of which have since been controlled entirely by him.

The question in the case is, who is entitled to the proceeds of these policies? the complainant insisting that she, after the payment of the debt due to Steller by her husband and the amount of assessments paid by Steller and interest, is so entitled; the defendants insisting that it does not belong to the complainant, but does belong to the wife of Steller.

Steller *v.* Sell.

. The agreement entered into between Mr. Sell and Mr. Steller, at the time the policies were taken out, is testified to by Mr. Steller. His account is that he applied to Mr. Sell, in 1884, requesting that insurance should be taken out for his own benefit, and that Stell assented. There was a difference between them, at first, in respect to the amount of insurance. Mr. Steller says that he only desired to take out an amount sufficient to secure him, and he mentioned, as the extent of the insurance he had in mind, that he was willing to take the $1,000 and the $2,500 policies. He says that Mr. Sell insisted that he should take out insurance to an amount up to the limit which the company would write upon one life. Steller demurred to this, on account of the amount of the assessments. He says that Sell then said that he would in the future be able to pay off the debt and "take the insurance off your hands." Steller says that he insisted that Sell should fix a time within which he would do this, and that Sell agreed to do so within two years.

After the policies were written, Steller paid the assessments for a period of ten years, until the death of Mr. Sell, when the amounts of the policies were paid as already stated.

It is perceived that the question involved is not in respect to the right to recover from the insurance company, for inasmuch as the money was paid by the insurance company, it is to be assumed that, under the terms of the contract with the insurance company, the legal right to recover was in Mrs. Steller. The object of the complainant is to impress a trust upon this fund in favor of herself, a trust springing out of the agreement entered into between Mr. Steller and her husband at the time when the insurances were effected. To reach the fund it must, in the first place, appear that this insurance was for the security of the husband, and that it was taken out as such with the knowledge of the wife, who, upon the face of the policy, was legally entitled to the proceeds of the policy. This, I think, clearly appears. The evidence is convincing that the wife was a mere figurehead in the transaction, knowing its terms and purpose, but having no equitable interest whatever in the proceeds of the policies. The question therefore is, what are the rights of Steller, the husband, as between him and the complainant?

Accepting Steller's statement of the contract, it is obvious that had Sell died before the expiration of the two years within which he was to pay his debt and reimburse Steller for his assessments, his estate or his wife would have been entitled to the surplus.

Now Steller does not say that it was agreed that if Sell failed to pay in two years he should forfeit all right to the policies, and that thereafter he or his wife was to be the only beneficiary.

Now, at the end of two years, Sell had not paid his debt and the assessments, and Steller had his choice to continue payment of the assessments upon all or a part or none of the policies. If he ceased to pay the installments or assessments, he lost the benefit of his past payments and the security of the policy ; if he continued to pay, he retained the security of the policies, but kept alive Sell's residuary interest. He was entitled to be reimbursed for what he lost by reason of Sell's breach of his contract, but inasmuch as he paid, and so lost nothing but what he paid, and interest, that is the measure of his compensation. All the payments during the two years are to be regarded as made by Steller for Sell, and so must, I think, all payments subsequent thereto which Steller chose to make.

The breach of Sell's promise did not forfeit his interest, which was so kept alive.

This seems to be the result flowing from Steller's own account of his agreement with Sell.

But aside from Steller's own story of the contract, it seems quite clear that he could not have regarded Sell's rights as extinct after the expiration of the two years. His statements subsequent to the death of Sell are opposed to the existence of any such notion. While the repetition of alleged admissions is always to be received with circumspection, because of the difficulty of repeating, with precision, language which has been used at a former period, yet it is impossible to doubt that Steller did, on more than one occasion, acknowledge that Sell had an interest in the surplus remaining after the payment of the debt and the assessments.

Aside from the testimony of Mrs. Sell and her daughter, there is the testimony of Mr. Hager, an intelligent gentleman, and a

witness who certainly could not be entirely mistaken as to the substance of Mr. Steller's conversation. To this witness he admitted that Mrs. Sell had an interest in these moneys. Now, if it had been true that Sell fixed the period of two years within which he should have the right to take these policies upon the condition named, and if it be true that it was understood by that agreement that upon his failure to take the policies within the period named, all his right in them should cease, why should Steller thereafter have admitted, in any form, the right of any-one other than his wife or himself, to receive any portion of the entire amount?

It is, however, said that Sell's letter, written to Steller in 1894, requesting a small loan and saying that his wife would repay it out of the money she would receive from other insurance in her favor upon his life, is opposed to the idea that he supposed he had interest in the present policies. There is force in this suggestion. But ten years had elapsed since these policies were written. He had paid nothing on the debt nor any assessments. He probably did not know whether they had been kept alive and was ashamed to inquire. He may not have realized what the right of his wife was in them after this lapse of time.

The evidence of Mr. Sell himself is lost by his death, but, taking all the facts of the case, I think that the complainant has so far proved her case it must be concluded that Sell at any time, upon the payment of the debt and assessments, had the right to redeem these policies, and that the payments made by Steller were made on the condition that he was to have a lien upon the amount of the policies as security for such payment in addition to this debt.

The next question is, if there was a trust, was it in favor of Sell or his wife? If the former, then this surplus goes to his estate, and the complainant must fail; if to the latter, then she is entitled to a decree.

Mr. Hager says that Steller admitted to him that by the arrangement with Sell the surplus was to go to Mrs. Sell. This is a most explicit statement. The other instances in which Mr.

Steller speaks of the interest of Mrs. Sell might be referred to either Mrs. Sell as administratrix of her husband or to herself individually, but the remark to Mr. Hager meant Mrs. Sell individually, and the remarks throughout the case in respect to the taking out of insurances to secure their wives, afforded an additional probability that if the agreement between Sell and Steller impressed upon these policies a trust at all, it was in favor of the wife of the insured. I therefore conclude that the complainant is entitled to a decree for the surplus, after the payment of the debt, assessments and interest.

In respect to the debt there is a contested item of $500. Steller says he loaned this amount to Mr. Sell on a train of cars going to New York, on the day after Thanksgiving, 1883. In respect to this loan, he has no evidence of indebtedness; none was taken, he says. The existence of the loan stands, therefore, upon the testimony of Steller alone. The fact that there are evidences of the other loans and none of this, is a circumstance (not conclusive, however) against the probability of this loan having been made. But the strongest objections to the recognition of this alleged loan as a debt, are in the admissions of the defendant himself. He admitted that he told Mr. Hager, in his first conversation with him, that the amount of the debt was $800. It was not until a conversation occurring some time afterwards that he said he had omitted an item of $500, and the reason he gave for omitting it was that he did not want his family to know anything about it. His statement on other occasions of the amount owing as about $2,500, would exclude the $500, because the interest upon the $800 admittedly owing, and upon the assessments, would have amounted to about the sum of $2,500. So I am constrained to the conclusion that the probabilities are strongly against the existence of this $500 indebtedness.

I will advise a decree in accordance with the prayer of the bill, upon the lines above indicated.

The opinion of the court was delivered by

LIPPINCOTT, J.

Originally the bill of complaint in this matter was filed in the court of chancery by the respondent, S. Elizabeth Sell, against John Steller, Jr., who is one of the appellants.

To this bill of complaint a demurrer was filed by John Steller, Jr., which, upon hearing, was overruled by the chancellor.

His opinion is reported in *8 Dick. Ch. Rep. 397.*

After the demurrer was overruled an answer by John Steller, Jr., was filed. After this answer an amended bill was filed, in which Ida Steller, the wife of John Steller, Jr., was made a party defendant to the bill of complaint. To this amended bill Ida Steller filed a separate answer. Some portion of this answer was expunged, after which the cause came to final hearing upon the bill, amended bill, answers and proofs, and a decree advised by Vice-Chancellor Reed in favor of the respondent against the appellants, from which decree this appeal was taken.

The contest in this case arises over the question who is entitled to certain excess insurance upon three policies which were taken out on the life of George W. Sell, the husband of the respondent.

The facts, briefly stated, appear to be that in March, 1884, George W. Sell, the husband of the respondent, obtained on his life three certificates of insurance in the Northwestern Masonic Aid Association. These certificates of insurance were for $2,500, $5,000 and $1,000, each certificate naming Ida Steller, his sister, as beneficiary. These certificates were taken out under the following circumstances : Sell became indebted to John Steller, Jr., the husband of Ida Steller, and she is the beneficiary named in each of the certificates of insurance. Steller proposed to Sell this insurance to secure his indebtedness. Steller, to obtain this insurance, proposed to keep the premiums or assessments thereon paid. After some negotiations between Sell and Steller, Sell assented to this method of insurance and the certificates were taken out in the sums named, which aggregated a much larger sum than the indebtedness. It further appears that it was agreed between Sell and Steller that on the death of Sell and upon the payment of the insurance money to Ida Steller, his sister, that

she should pay the money to Steller, and Steller then should retain the indebtedness and interest thereon and all assessments and premiums paid on the insurance and interest thereon, and then pay the balance to the respondent, the widow of Sell. It also further appears that Sell promised that, within the space of two years, he would pay the indebtedness to Steller and also such assessments as had been advanced by Steller on the insurance, and interest thereon, and take the life insurance to himself.

Under the articles of incorporation of the aid society, only a blood relative of the insured could be made a beneficiary. The insurance was received by Ida Steller, paid over to John Steller, Jr., and now Mrs. Sell seeks to have a trust declared in her favor for the excess of insurance after the payment of the indebtedness and the assessments and interest, and asks for an accounting and payment over to her. Steller paid the assessments on the insurance for ten years, when Sell, in 1894, died, and the amount of the certificates was paid by check of the aid society to the order of Mrs. Steller, which check was by her endorsed and delivered to her husband on June 21st, 1894, who collected the money thereon and has since controlled the proceeds of the certificates of insurance.

The indebtedness of Sell at the time the insurances were taken out, according to the statement of Steller, was $1,300. The respondent understood that it was only $800. The facts are very fully stated in the opinion of the learned vice-chancellor and need not be repeated.

Only such facts are here stated as reveal the questions raised and argued in this court.

The respondent insisted in the court of chancery that after the payment of the debt due Steller by her husband, and the amount of the premiums or assessments, and all interest thereon, she was entitled to the balance of the policies ; the appellants claimed that the balance belonged to Mrs. Steller.

The decree in the court of chancery, as advised by the vice-chancellor, was that the appellant Ida Steller had no equitable interest in the proceeds of the insurance, and that a trust was impressed upon the certificates in favor of the respondent, and

Steller *v.* Sell.

that after the receipt by John Steller, Jr., of the proceeds of the insurance on June 21st, 1894, he was bound to pay the same, less the assessments paid by him and interest, and less also the indebtedness of Sell to Steller and interest, to the respondent.

The conclusion reached by the court is that so far this decree of the court of chancery should be affirmed.

By the decree, upon the accounting, as stated by the learned vice-chancellor, between the respondent and Steller, he was allowed the amount of the assessments paid by him, with an average interest thereon, to the 21st day of June, 1894, and so far again the decree is affirmed.

By the decree there was also allowed to Steller an indebtedness of $800 loaned to Sell prior to September 1st, 1883, and interest thereon from the latter date to June 21st, 1894, and that there was due from Steller to the respondent, as the excess proceeds of the certificates, the sum of $5,916.66.

Upon a consideration of the facts of the case, I have reached the conclusion that the part of the decree allowing to Steller only an indebtedness of $800 and interest thereon, and fixing the amount as due from Steller to the respondent at the sum of $5,916.66, is erroneous.

Steller swears distinctly and emphatically that at the time the policies were taken out, Sell was indebted to him in the sum of $1,300. The indebtedness of $800 was admitted by the respondent. Steller declares circumstantially that in November, 1883, he thinks it was the 29th or 30th of the month, the day after Thanksgiving, a further loan of $500 was made by him to Sell. It was to be but a temporary loan for a week or two, but Sell being unable to repay it, the indebtedness continued and existed at the time of the issuance of the certificates of insurance and has never been repaid. It is true that Steller admitted in his evidence that he had told others of the loan of $800, but had omitted to mention the fact of the loan of $500. His explanation of this omission is that he did not wish his wife to know of it at the time. It is true that he at other times stated that the indebtedness of Sell to him amounted to about $2,500, which would be about the amount of the assessments and interest, and

$800 and interest. While these are circumstances of suspicion as to the correctness of his claim for the additional sum of $500, yet it is not sufficient to overcome his positive evidence as to the loan of this amount and the detail of facts and circumstances under which it was made.

The conclusion reached upon the proof is that this additional loan of $500 was made, and that in the accounting Steller should have been allowed that additional sum and interest thereon from November 30th, 1893, the date of its advancement to Sell, to June 21st, 1894, and that the decree, in so far as it omitted this allowance, should be reversed, and the cause remanded to the court below to the end that such additional allowance of $500 and interest be made, and the decree of that court, so modified and corrected, carried into execution.

I shall, therefore, vote for such modified reversal of this decree.

*For reversal*—COLLINS, DEPUE, DIXON, GARRISON, GUM-MERE, LIPPINCOTT, LUDLOW, VAN SYCKEL, BOGERT, DAYTON, HENDRICKSON, NIXON—12.

*For affirmance*—None.